# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CAROLINE ANTOUN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 13-1366-JWL |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.    Background**

Plaintiff applied for SSD, alleging disability beginning November 1, 2009. (R. 10, 130-31). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She claims the

Administrative Law Judge (ALJ) erred in evaluating the medical opinion of her treating physician, Dr. Knight.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's evaluation of Dr. Knight's treating source opinion and, therefore, affirms the decision below.

## II.     The Parties' Arguments

Plaintiff claims the ALJ failed to provide sufficient reasons to discount Dr. Knight's treating source opinion because although he found that the opinion was not worthy of controlling weight, he did not evaluate the opinion in light of the regulatory factors for weighing medical opinions. (Pl. Br. 15-17). She also claims that the reasons given for discounting Dr. Knight's opinion are not supported by substantial record evidence because contrary to the ALJ's findings, the evidence shows that Plaintiff has scoliosis of the spine, the evidence shows that Plaintiff had taken hydrocodone, the ALJ ignored many treatment notes supporting Dr. Knight's opinion, and Dr. Knight provided a medical source statement regarding Plaintiff's limitations but did not provide an opinion on an issue reserved to the Commissioner. Id. at 17-20.

The Commissioner argues that in accordance with the legal standard for evaluating a treating physician's opinion the ALJ first determined that Dr. Knight's opinion was not worthy of controlling weight and then determined that the opinion was worthy of "little weight." (Comm'r Br. 12-13). She then explains how that in her view substantial evidence supports the ALJ's determination. Id. at 14-17.

## III.    The ALJ's Evaluation

The ALJ explained his evaluation of Dr. Knight's opinion:

The undersigned has considered the <u>Medical Source Statement - Physical</u>, completed on December 6, 2011 by the claimant's treating physician Denis Knight, D.O. (Exhibit B24F). In his statement, Dr. Knight limited the claimant to less than a full range of sedentary work, and noted that she "has still been unable to gain or maintain any meaningful employment" (Exhibit B24F/4). If a treating source's medical opinion is well-supported and consistent with the evidence in the case record, it must be given controlling weight (20 CFR 404.1527 and SSR 96-2p ). When the aforementioned factors are considered, the opinion of Dr. Knight is not given controlling weight.

This opinion is [(1)] without support from the other evidence of record, which renders it less persuasive. Further, [(2)] while Dr. Knight references the claimant's back pain, the record does not establish that the claimant has any significant musculoskeletal impairment. Although an x-ray of the lumbar spine performed in April 2010 noted scoliosis and minimal degenerative changes (Exhibit B8F/2), subsequent records from Heartland Cardiology dated in December 2011 noted no evidence of scoliosis (Exhibit B20F/8). [(3)] While the claimant's obesity may impose some functional limitation, her symptoms improved even by her own testimony prior to Dr. Knight's completion of the source statement. [(4)] In addition, while Dr. Knight noted side effects from Hydrocodone, the claimant's treatment records do not support the claimant took such medication. [(5)] Further, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance (SSR 96-5p).

In addition, [(6)] Dr. Knight's opinion is not consistent with his own treatment notes. Results of a physical examination performed on October 31, 2011 indicated that the claimant's sensory and motor function was within normal limits, motor strength was 5/5 bilaterally, deep tendon reflexes were bilateral and symmetric, and cranial nerves II-XII were normal (Exhibit B23F/3). For the reasons stated above, the undersigned finds the opinion of Dr. Knight entitled to little weight.

(R. 19-20) (numbering added for ease of reference).

### III.    The Standard for Evaluating a Treating Source Medical Opinion

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned that opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

## IV. Analysis

As the Commissioner suggests, in accordance with the legal standard for evaluating a treating physician opinion, the ALJ first determined that Dr. Knight's opinion would not be given controlling weight. (R. 19). The first reason given by the ALJ to discount Dr. Knight's opinion was that it "is without support from the other evidence of record." Id. This reason constitutes a finding that Dr. Knight's opinion should not be accorded controlling weight because it is "inconsistent with the other substantial evidence in [claimant's] case record." 20 CF.R. § 404.1527(c)(2).

The standard to deny controlling weight is low. Social Security Ruling (SSR) 96-2p, cited by the court in Watkins, explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971). SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2014). As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."

Here, Dr. Siemsen "affirmed as written" the RFC assessment completed on July 21, 2010 by a single decisionmaker. (R. 374). That RFC assessment concluded that Plaintiff is able to perform a range of light work with certain additional postural, manipulative, and environmental limitations. (R. 366-73). Because Dr. Siemsen is a medical doctor who reached his opinion based upon a review of all of the evidence then in Plaintiff's case file, his opinion constitutes relevant evidence that a reasonable mind might accept as adequate to support a conclusion which is contrary to Dr. Knight's conclusion that Plaintiff is much more limited in her abilities, and "that she has been and continues to be disabled." (R. 517). Based upon that reason alone, there can be no error in the ALJ's determination not to give controlling weight to Dr. Knight's opinion.

The ALJ continued his analysis beyond the question of controlling weight and expressed five additional reasons as quoted above to accord "little weight" to Dr. Knight's opinion. (R. 19-20). Plaintiff's argument that the ALJ did not evaluate Dr. Knight's opinion in light of the regulatory factors for weighing medical opinions is without merit. It is true that the ALJ did not discuss and analyze each of the six factors cited above. However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). There can be no question but that standard was met here.

Contrary to Plaintiff's arguments, the reasons given by the ALJ to discount Dr. Knight's opinion are supported by record evidence. Plaintiff argues that the second reason given to discount Dr. Knight's opinion is erroneous because the record contains x-ray evidence of scoliosis, and although a cardiologist's findings "did not reveal scoliosis," that "is not a sufficient reason to discount Dr. Knight's opinion that [Ms. Antoun] did suffer from back pain." (Pl. Br. 18). Plaintiff's argument misses the point of reason number two. The point of reason two was that although Dr. Knight's opinion makes much of Plaintiff's back pain, the record does not establish a <u>significant</u> musculoskeletal impairment. (R. 19). The ALJ specifically acknowledged that an x-ray of Plaintiff's lumbar spine in April 2010 noted scoliosis[1] and minimal degenerative changes. (R. 19-20) (citing Ex. B8F/2 (R. 346)). But, the ALJ also pointed to a subsequent treatment note from Heartland Cardiology in December 2011 which specifically noted "no evidence of scoliosis." (R. 568).[2] As Plaintiff points out, the treatment note at issue is the report of a physical examination performed by a cardiologist when Plaintiff was being treated for rapid heart rate and lightheadedness. (Pl. Br. 18). As Plaintiff's argument implies, a lay person would not expect the physical examination of a cardiologist relating to a specific heart complaint to be concerned with issues of scoliosis. However, the ALJ's reference is

---

[1]The x-ray report stated, "The patient has mild scoliosis of the lumbar spine." (R. 346) (Ex. B8F/2).

[2]The decision cites this record as Ex. B20F/8, but the actual treatment note is at Ex. B30F/8 (R. 568). Plaintiff acknowledges that this is the treatment note cited by the ALJ. (Pl. Br. 18) (citing the first page of this treatment note (R. 567)).

not to a case where the physical examination report just failed to mention or otherwise note the presence of scoliosis, the cardiologist specifically reported "no evidence of scoliosis." (R. 568). As the ALJ noted, an x-ray revealed mild scoliosis, but a year-and-a-half later a medical doctor specifically reported no evidence of scoliosis on a physical examination. As the ALJ found, this inconsistency reveals a record which does not establish a significant musculoskeletal impairment of the back.

Plaintiff next attacks reason number four (Dr. Knight noted side effects from hydrocodone, but the treatment records do no indicate Plaintiff took such medication). Plaintiff points to the discharge summary from her gastric bypass surgery which reveals that she was prescribed about a week's supply of Lortab Elixer, and to the National Institutes of Health website which states that Lortab is a combination form of hydrocodone, and argues that this evidence supports Dr. Knight's opinion regarding side effects. While Plaintiff is apparently technically correct that she did in fact take hydrocodone at one time, she has shown no prejudice from this error. She points to nothing in Dr. Knight's treatment records which indicate that she reported side effects from hydrocodone (or Lortab) to Dr. Knight. Moreover, she admits that she is not presently taking hydrocodone, and does not establish that it has any affect on her functioning at the present time. At worst, this error has little if any affect on the ALJ's analysis.

Plaintiff argues that reason number six (that Dr. Knight's opinion is inconsistent with his treatment notes) is error because the ALJ cited a single examination report from

October 31, 2011 and ignored "11 other appointments which do support Dr. Knight's opinion." (Pl. Br. 19).  From those 11 other treatment notes, Plaintiff argues that Dr. Knight's suggestion of disability and functional limitations which include lifting a maximum of five pounds and standing, walking, or sitting only two hours each in an eight-hour workday is supported by his notations on occasion that she appeared older than her stated age, appeared uncomfortable, had a loss of lumbar lordosis, exhibited lumbosacral tenderness and lumbar muscle spasm, had positive straight leg raising, and range of motion was limited due to pain.  Id. (citing R. 310, 314, 319-20, 461, 463, 497).  The evidence relied upon by Plaintiff is from Dr. Knight's recording of his physical examination in each of the treatment notes cited.  However, Plaintiff does not explain how the evidence cited demonstrates that her functional limitations are as great as Dr. Knight opines.  Moreover, half of the notes cited occurred before Plaintiff's gastric bypass surgery.  Of the three cited visits occurring after the surgery, one occurred days after the surgery (R. 463) (4/20/2011) and one occurred about a month after surgery.  (R. 461) (5/23/2011).  Even one month after surgery, Dr. Knight noted that, "[s]he is successfully losing weight."  (R. 462).  Finally, nowhere in the treatment notes (before or after bypass surgery) does Dr. Knight suggest functional limitations as severe as opined in his medical source statement, and he does not relate any of the negative examination findings to specific functional limitations.  As the ALJ found, Dr. Knight's opinion is not consistent with his treatment notes.

Finally, Plaintiff points to reason number five (opinions on issues reserved to the Commissioner are entitled to no special significance) and argues that Dr. Knight's opinion was a medical source statement regarding functional limitations and was therefore not on an issue reserved to the Commissioner. (Pl. Br. 20-21). To the extent of Dr. Knight's medical source statement form, Plaintiff is correct. But, her argument ignores that Dr. Knight's opinion included a narrative "To whom it may concern" letter in which Dr. Knight opined that despite her gastric bypass and subsequent weight loss Plaintiff has been "unable to gain or maintain any meaningful employment," and that "she has been and continues to be disabled." (R. 517). As the ALJ noted, opinions that a claimant is disabled or opinions regarding vocational factors are issues reserved to the Commissioner and will not be given any special significance. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ did not err in stating this as one basis to discount Dr. Knight's opinion.

The ALJ provided six, specific, legitimate reasons to discount Dr. Knight's opinion as required by the law of the Tenth Circuit. Although Plaintiff has shown a technical deficiency in a portion of the ALJ's reason number four, she has not shown error resulting from that deficiency because she has not shown that she was taking hydrocodone on a regular basis during the period at issue.

Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 19th day of December 2014, at Kansas City, Kansas.


                    s:/ John W. Lungstrum
                    **John W. Lungstrum**
                    **United States District Judge**